IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| YERAYEL YEHUDA, | ) |
| Plaintiff, | ) Civil Action No. 24-cv-00608-LKG |
| v. | ) Dated: April 29, 2025 |
| MONTGOMERY COUNTY, MD, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

In this civil action, the Plaintiff, Yerayel Yehuda, brings Section 1983 and negligence claims against the Defendants, Montgomery County, Maryland, Warden Frederick Abello and Deputy Warden Bernard Wade (collectively, the "County Defendants"), and Maryland State Trooper Keifer Stafford ("Trooper Stafford"), arising from his arrest and detention at the Seven Locks Detention Center on October 24, 2022. ECF No. 42.

The County Defendants have moved to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 46. Trooper Stafford has also moved to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 47. The motions are fully briefed. ECF Nos. 46, 47, 48, 49, 50 and 53. No hearing is necessary to resolve the motions. L.R. 105.6 (D. Md. 2023). For the reasons that follow, the Court: (1) **GRANTS** the County Defendants' motion to dismiss (ECF No. 46); (2) **GRANTS** Trooper Stafford's motion to dismiss (ECF No. 47); and (3) **DISMISSES** the amended complaint (ECF No. 42).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

In this civil action, Plaintiff Yerayel Yehuda brings Section 1983 and negligence claims against the County Defendants and Trooper Stafford arising from his arrest and detention at the Seven Locks Detention Center on October 24, 2022. ECF No. 42. Specifically, the Plaintiff asserts the following claims in the complaint: (1) Section 1983 (Eighth Amendment/deliberate indifference) against the County Defendants (Count I); (2) gross negligence against Trooper Stafford (Count II); and (3) negligence against the County Defendants (Count III). *Id.* at ¶¶ 40-62. As relief, the Plaintiff seeks, among other things, to recover compensatory and punitive damages from the Defendants. *Id.* at Prayer for Relief.

The Parties

Plaintiff Yerayel Yehuda is a resident of Maryland and he suffers from Schizoaffective Bi-Polar Disorder. *Id.* at ¶¶ 3 and 8.

Defendant Montgomery County, Maryland is a local government entity. *Id.* at ¶ 4.

Defendant Frederick Abello is the Warden of the Seven Locks Detention Center and a Montgomery County employee. *Id.* at ¶ 5.

Defendant Bernard Wade is the Deputy Warden of the Seven Locks Detention Center and a Montgomery County employee. *Id.* at ¶ 6.

Defendant Keifer Stafford is a Maryland State Trooper. *Id.* at ¶ 7.

The Plaintiff's Arrest And Hospitalization

As background, on October 24, 2022, Trooper Stafford encountered the Plaintiff sitting in a disabled vehicle. *Id.* at ¶ 9. When Trooper Stafford approached the Plaintiff, the Plaintiff was slow to respond, his eyes were blood shot and his pupils were dilated. *Id.* at ¶ 10. It is undisputed that the Plaintiff gave Trooper Stafford a false name. *Id.* at ¶ 11.

Trooper Stafford transported the Plaintiff to the Maryland State Police barracks located in Rockville, Maryland. *Id.* at ¶ 12. When the Plaintiff arrived at the Maryland State Police

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint; the County Defendants' motion to dismiss and the memorandum in support thereof; Trooper Stafford's motion to dismiss and the memorandum in support thereof; the exhibits attached thereto; and the Plaintiff's responses in opposition to the Defendants' respective motions. ECF Nos. 33, 42, 46, 47, 48 and 49. Unless otherwise stated, the facts are undisputed.

barracks, he provided Trooper Stafford with his correct name. *Id*. at ¶ 12. Trooper Stafford then transported the Plaintiff to the Seven Locks Detention Center. *Id*. at ¶ 13.

Upon arrival at the Seven Locks Detention Center, the Plaintiff refused to exit Trooper Stafford's vehicle. *Id*. at ¶ 14. And so, Trooper Stafford charged the Plaintiff with resisting arrest, failure to obey a lawful order and making a false statement to a police officer. *Id*. at ¶¶ 14-15.

When he entered the Seven Locks Detention Center, the Plaintiff was fingerprinted and identified as Yerayel Yehuda. *Id*. at ¶ 16. Trooper Stafford then booked the Plaintiff. *Id*. at ¶ 19. But Trooper Stafford incorrectly listed the Plaintiff's name as "Drake Daniels" in the Statement of Charges. *Id*. at ¶ 18; *see also* ECF No. 33-2 at 1.

On the same day that the Plaintiff was arrested, his parents filed an emergency evaluation petition with the Montgomery County District Court and the Montgomery County Sheriff's Department went to the Plaintiff's apartment to collect him after the petition was granted. *Id*. at ¶¶ 20-21. Because the Montgomery County Sheriff's Department could not locate the Plaintiff on October 24, 2022, the Sheriff returned to the Plaintiff's apartment on October 25, 2022, and he found the Plaintiff's apartment door open. *Id*. at ¶ 22. Given this, the Plaintiff's parents filed a missing person report for a vulnerable person on October 25, 2022. *Id*. at ¶ 23.

On November 1, 2022, a bail hearing was held in the Plaintiff's criminal case in the District Court for Montgomery County, Maryland. *Id*. at ¶ 26. The state court found the Plaintiff to be incompetent to stand trial due to a mental disorder. *Id*. at ¶ 27; *see* ECF No. 46-3. And so, the state court ordered that: (1) the Plaintiff be committed to the Maryland Department of Health; (2) the Department of Health admit the Plaintiff to a designated health care facility as soon as possible and no later than 10 business days after the bail hearing; and (3) the Montgomery County Sheriff's Department transport the Plaintiff to the facility designated by the Maryland Department of Health immediately upon notification by the Maryland Department of Health (the "State Court Order"). *See* ECF No. 46-3.

On December 28, 2022, the Montgomery County Sheriff's Department transported the Plaintiff to Springfield Psychiatric Hospital. ECF No. 42 at ¶ 29. The Plaintiff's parents became aware that he had been arrested and committed to the Springfield Psychiatric Hospital on February 2, 2023. *Id*. at ¶ 36.

3

The Plaintiff's Allegations

In Count I of the amended complaint, the Plaintiff alleges that Warden Abello and Deputy Warden Wade were aware of his mental disorder and disregarded the risk to his mental health, by allowing the Plaintiff to languish in the Seven Locks Detention Center for approximately two months. *Id*. at ¶¶ 40-47. The Plaintiff also alleges that Warden Abello and Deputy Warden Wade showed deliberate indifference to his "serious medical needs," in violation of his constitutionally protected rights under the Eighth Amendment. *Id*. at ¶ 44. And so, the Plaintiff seeks to recover, among other things, compensatory and punitive damages from Montgomery County. *Id*. at 6.

In Count II of the amended complaint, the Plaintiff asserts a gross negligence claim against Trooper Stafford. *Id*. at ¶¶ 48-55. In this regard, the Plaintiff alleges that Trooper Stafford owed him a duty of care and breached that duty by misidentifying him as "Drake Daniels" in the Statement of Charges, resulting in his injury. *Id*. at ¶¶ 49-54. The Plaintiff further alleges that the actions by Trooper Stafford were done "recklessly and wantonly and willfully." *Id*. at ¶ 55. And so, the Plaintiff seeks to recover compensatory and punitive damages from Trooper Stafford. *Id*. at 7.

Lastly, the Plaintiff brings a negligence claim against Warden Abello and Deputy Warden Wade in Count III of the amended complaint. *Id*. at ¶¶ 56-62. In this regard, the Plaintiff alleges that Warden Abello and Deputy Warden Wade owed him a duty of care to ensure that his medical needs were properly addressed, they breached this duty by failing to ensure that the State Court's Order was adhered to and by failing to ensure his medical needs were attended to, he has been damaged by the conduct of these Defendants. *Id*. at ¶¶ 57-60. In addition, the Plaintiff alleges that Warden Abello and Deputy Warden Wade were acting at the time as employees and agents of Montgomery County. *Id*. at ¶ 62. And so, the Plaintiff seeks to recover compensatory and punitive damages from Montgomery County. *Id*. at 9.

**B. Relevant Procedural History**

The Plaintiff commenced this matter on February 28, 2024. ECF No. 1. On October 12, 2024, the Plaintiff filed the amended complaint. ECF No. 42.

On November 13, 2024, the County Defendants filed a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 46 and 46-1. On November 14, 2024, Trooper Stafford filed a motion to dismiss the

4

amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 47 and 47-1.

On December 2, 2024, the Plaintiff filed responses in opposition to the Defendants' respective motions to dismiss. ECF Nos. 48 and 49. On December 9, 2024, Trooper Stafford filed a reply brief. ECF No. 50. On December 11, 2024, the County Defendants filed a reply brief. ECF No. 53.

The motions to dismiss having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)). [2]

---

[2] The United States Court of Appeals for the Fourth Circuit has held that the Court may consider documents beyond the complaint when considering a motion to dismiss under Rule 12(b)(6), if the documents are "explicitly incorporated into the complaint by reference," or are "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998).

### B. Section 1983 And *Monell* Claims

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors. *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages). As an initial matter, "liability under § 1983 attaches only upon a showing of personal participation" against the individual defendants in the case. *Chew v. Platt*, No. CV JKB-20-3075, 2022 WL 294500, at *4 (D. Md. Jan. 27, 2022) (citing *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001)). In this regard, to establish personal liability under Section 1983, a plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights and the official's own individual actions must have violated the Constitution. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018).

In addition, Section 1983 permits a plaintiff to bring a claim directly against a municipality if the municipality causes a deprivation of a constitutional right through an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Given this, a municipality may be liable under Section 1983 when a municipality's "policy or custom" has caused the violation of an individual's federal rights. *Monell*, 436 U.S. at 690-95. And so, a county or municipality "cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual . . . officer,' at least in suits for damages." *Waybright v. Frederick Cnty.*, 528 F.3d 199, 203 (4th Cir. 2008) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))); *English v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024). In addition, the Fourth Circuit has held that a *Monell* plaintiff must adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). And so, the municipality's conduct must demonstrate "deliberate indifference to the rights of potentially affected citizens," in order for conduct to be properly thought of as a "policy." *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997).

### C. Deliberate Indifference Claims

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. This prohibition is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660 (1962). When an incarcerated person bringing an Eighth Amendment cruel and unusual punishment claim is a "pretrial detainee and not a convicted prisoner," the Fourteenth Amendment, not the Eighth Amendment governs the claim. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)).[3]

A pretrial detainee can prove a deliberate indifference claim based upon a serious medical condition, by showing "'deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Id*. (citation omitted); *see also Martin*, 849 F.2d at 870 (observing that "[t]he due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner"); *Short v. Hartman*, 87 F.4th 593, 612 (4th Cir. 2023) (affirming the Eighth Amendment test remains sufficient but is not necessary). This test is satisfied by the showing of a subjective and objective element: (1) an objectively "serious" medical condition; and (2) that a prison official "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Mays*, 992 F.3d at 300 (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).

### D. Negligence And Gross Negligence Claims

Maryland law defines negligence as "any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of others against unreasonable risk of harm." *Mayor & City Council of Baltimore v. Hart*, 910 A.2d 463, 472 (Md. 2006) (quoting *Holler v. Lowery*, 157, 200 A. 353, 357 (Md. 1938)). Maryland courts have also held that gross negligence is "something *more*" than mere negligence, requiring conduct "more akin to reckless conduct." *Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 862 A.2d

---

[3] Deliberate indifference claims for pretrial detainees are analyzed under the Fourteenth Amendment. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). The Due Process Clause of the Fourteenth Amendment requires that government officials not be deliberately indifferent to any serious medical needs of a pretrial detainee. *Id*. at 301.

1026, 1035 (Md. 2004) (emphasis in original). In this regard, the Maryland Supreme Court has described grossly negligent conduct to be:

> [I]ntentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist.

*Cooper v. Rodriguez*, 118 A.3d 829, 845-846 (Md. 2015) (quoting *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007)).

To properly plead a claim for negligence or gross negligence, a plaintiff must allege facts to show: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual loss or injury, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Todd v. Mass Transit Admin.*, 816 A.2d 930, 933 (Md. 2003); *see Scott v. Watson*, 359 A.2d 548, 552 (Md. 1976); *Torbit v. Baltimore City Police Dep't*, 153 A.3d 847, 853 (Md. Ct. Spec. App. 2017) (applying these elements to a claim for gross negligence). In determining the existence of a duty, the Court considers, among other things:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 233 A.3d 59, 73 (Md. 2020) (citations omitted). "Among these factors, foreseeability weighs the heaviest." *Id.* (citation omitted). Relevant to this case, this Court has held that police officers do not owe a special duty to arrestees. *Krell v. Queen Anne's Cnty.*, No. CV JKB-18-637, 2018 WL 6523883, at *14 (D. Md. Dec. 12, 2018). And so, police officers only have a duty to act with reasonable care. *Id.*

### E. Governmental Immunity And Public Official Immunity

In Maryland, a "municipality or county is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity." *Nam v.*

8

*Montgomery Cnty.*, 732 A.2d 356, 362 (Md. 1999) (quoting *Godwin v. Cnty. Comm'rs*, 260 A.2d 295, 299 (Md. 1970)). "Governmental" acts are those "performed … for the common good of all" rather than "for the special benefit or profit" of the municipality. *Tadjer v. Montgomery Cnty.*, 479 A.2d 1321, 1325 (Md. 1984). Relevant here, Maryland courts have found that the maintenance of prisons and jails is a governmental function. *See Jones v. Montgomery Cnty.*, No. 1910 Sept. term 2014, 2016 WL 1321396, at *4 (Md. Ct. Spec. App. Apr. 5, 2016) ("Applying these guidelines to the issue presented here, we note that the acts of the County in maintaining prisons and jails 'is sanctioned by legislative authority.'") (quoting *Zilichikhis v. Montgomery Cnty.*, 115 A.3d 685, 705 (Md. Ct. Spec. App. 2015)); *see also Jones Hollow Ware Co. of Balt. City v. Crane*, 106 A. 274, 278 (Md. 1919) ("The erection and operation of prisons and jails . . . is a purely governmental function, being an indispensable part of the administration of the criminal law") (quoting William M. McKinney & Burdett A. Rich, *Establishment, Maintenance and Regulation of Prisons*, 21 RCL 1168 (1918)); *Holly v. Scott*, 434 F.3d 287, 300 (4th Cir. 2006) ("Certainly, incarcerating and caring for those confined by the government for criminal conduct is just as much a public function as maintaining a park").

Public officials may also be immune from suit for negligent acts under the common law doctrine of public official immunity. *Houghton v. Forrest*, 989 A.2d 223, 227-28 (Md. 2010). Notably, prison wardens are "public officials" that may be entitled to common law public official immunity from suit. *See Carder v. Steiner*, 170 A.2d 220, 221 (Md. 1961), *overruled on other grounds by James v. Prince George's Cnty.*, 418 A.2d 1173, 1178 (Md. 1980). In this regard, Maryland courts have held that public official immunity applies when: "(1) the individual actor, whose alleged negligent conduct is at issue, is a public official rather than a mere government employee or agent; … (2) his tortious conduct occurred while he was performing discretionary, as opposed to ministerial, acts in furtherance of his official duties" and (3) the public official acted without malice. *Livesay v. Baltimore Cnty.*, 862 A.2d 33, 40 (Md. 2004). A public official's duties are discretionary when the public official may act according to the "dictates of their own judgment and conscience and uncontrolled by the judgment or conscience of others." *Cooper*, 118 A.3d at 848-49 (citing *Livesay*, 862 A.2d at 41) (citation and internal quotation marks omitted). But, common law public official immunity does not apply in cases where an official committed an intentional tort. *Houghton*, 989 A.2d at 228.

### IV.	ANALYSIS

The County Defendants have moved to dismiss Counts I and III of the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), upon the grounds that: (1) the Plaintiff fails to state a plausible Section 1983/deliberate indifference claim; (2) the amended complaint fails to state a *Monell* claim against Montgomery County; and (3) the County Defendants are entitled to governmental and public official immunity with regards to the Plaintiff's negligence claim. ECF No. 46-1. And so, the County Defendants request that the Court dismiss Counts I and III of the amended complaint. *Id*. at 14.

Trooper Stafford has also moved to dismiss the Plaintiff's gross negligence claim against him in Count II of the complaint, pursuant to Fed. R. Civ. P. 12 (b)(6), upon the grounds that the Plaintiff fails to state a plausible claim for gross negligence under Maryland law. ECF No. 47-1. And so, Trooper Stafford requests that the Court dismiss Count II of the amended complaint. *Id*. at 8.

In his responses in opposition to the Defendants' respective motions to dismiss, the Plaintiff argues that the Court should not dismiss this matter, because the amended complaint contains sufficient factual allegations to state claims for deliberate indifference to a serious medical need and gross negligence. ECF Nos. 48 and 49. And so, the Plaintiff requests that the Court deny the Defendants' motions to dismiss. ECF No. 48 at 6; ECF No. 49 at 9.

For the reasons that follow, a careful reading of the amended complaint shows that the Plaintiff fails to state a plausible Section 1983/deliberate indifference claim against the County Defendants, because the amended complaint lacks factual allegations to show either that: (1) Warden Abello and Deputy Warden Wade had personal involvement in any violation of the Plaintiffs' constitutional rights, or (2) the County Defendants were deliberately indifferent to the Plaintiff's serious medical needs. The amended complaint also lacks facts to show the existence of any official policy or custom of Montgomery County that caused the alleged deprivation of the Plaintiff's constitutional rights.

In addition, the County Defendants have shown that they are entitled to immunity with regards to the Plaintiff's negligence claim. Lastly, a careful reading of the amended complaint also shows that the Plaintiff does not state a plausible gross negligence claim against Trooper Stafford, because he alleges no facts to show that Trooper Stafford had, or breached, a duty of care. And so, the Court: (1) GRANTS the County Defendants' motion to dismiss (ECF No. 46);

(2) GRANTS Trooper Stafford's motion to dismiss (ECF No. 47); and (3) DISMISSES the amended complaint (ECF No. 42).

### A. The Plaintiff Fails To State A Plausible Deliberate Indifference Claim

As an initial matter, the County Defendants argue with persuasion that the Plaintiff fails to state a plausible Section 1983/deliberate indifference claim based upon a serious medical need in the amended complaint. To state a deliberate indifference claim based upon a serious medical need, the Plaintiff must allege facts to show: (1) an objectively "serious" medical condition and (2) that Warden Abello and Deputy Warden Wade "had actual subjective knowledge of both [his] serious medical condition and the excessive risk posed by [their] action or inaction." *Mays*, 992 F.3d at 300 (citing *Jackson*, 775 F.3d at 178). In this regard, this Court has held that Section 1983 liability attaches only when there is personal participation by the defendant. *Chew*, 2022 WL 294500, at *4 (citing *Trulock*, 275 F.3d at 402). And so, the Plaintiff must affirmatively show here that Warden Abello and Deputy Warden Wade acted personally in the deprivation of his constitutional rights and that their individual actions violated the Constitution. *See Williamson*, 912 F.3d at 171.

The Plaintiff has not satisfied his burden in this case. A careful reading of the amended complaint shows that the Plaintiff does not allege any facts to show that Warden Abello and Deputy Warden Wade were personally involved in the alleged violation of his constitutional rights. Notably, there are no facts in the amended complaint to show that the Warden Abello and Deputy Warden Wade were personally aware of the Plaintiff's mental health condition. *See generally* ECF No. 42. There are also not facts to show that Warden Abello or Deputy Warden Wade participated in the Plaintiff's care while he was detained at the Seven Locks Detention Center in any way. *Id.*

Nor are there any factual allegations in the amended complaint to show that Warden Abello and Deputy Warden Wade were aware of the State Court Order, or that these defendants failed to comply with that order, as the Plaintiff alleges. *See generally id*. The amended complaint similarly fails to allege facts to show that Warden Abello and Deputy Warden Wade had actual subjective knowledge of any excessive risk posed by their alleged action or inaction in this case. *See generally id*. Given this, there are simply no factual allegations in the amended complaint to show that either Warden Abello or Deputy Warden Wade were personally involved

in the alleged deprivation of the Plaintiff's constitutional rights. *See Williamson*, 912 F.3d at 171.

The County Defendants also correctly argue that the Plaintiff cannot hold Warden Abello and Deputy Warden Wade vicariously liable for the alleged violation of his constitutional rights. ECF No. 46-1 at 7-9; *see Williamson*, 912 F.3d at 171; *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (holding that the Plaintiff asserting a Section 1983 claim of denial of medical treatment following incarceration in county jail, could not recover from a state superintendent of jails, absent allegation of any personal connection between superintendent and any denial of plaintiff's constitutional rights). And so, the Court must DISMISS the Plaintiff's Section 1983 deliberate indifference claim against Warden Abello and Deputy Warden Wade. Fed. R. Civ. P. 12(b)(6).

The Plaintiff's *Monell* claim against Montgomery County is also problematic. As discussed above, there are no factual allegations in the amended complaint to show that Warden Abello and Deputy Warden Wade violated the Plaintiff's constitutional rights. Given this, Montgomery County cannot be held liable under a *Monell* theory in this case. *Waybright*, 528 F.3d at 203 (quoting *City of Los Angeles*, 475 U.S. at 799) (A county or municipality "cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual . . . officer,' at least in suits for damages."); *see also English*, 90 F.4th at 649 ("To make out a case for departmental liability under [*Monell*], [the Plaintiff] must show both that he has suffered a constitutional harm and that the harm was the result of the [defendant's] unconstitutional policy or custom"). The amended complaint also lacks factual allegations to identify a policy, custom, or practice of Montgomery County that resulted in the alleged deprivation of the Plaintiff's constitutional rights. *See generally* ECF No. 42; *see also Jordan ex rel. Jordan*, 15 F.3d at 338 (A *Monell* plaintiff must adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights."). Given this, the Court must also DISMISS the Plaintiff's Section 1983 *Monell* claim against Montgomery County. Fed. R. Civ. P. 12 (b)(6).

### B. The County Defendants Are Entitled To Immunity With Regards To The Plaintiff's Negligence Claim

The County Defendants have also shown that they are entitled to either governmental or public official immunity with regards to the Plaintiff's negligence claim in Count III of the

12

amended complaint. Montgomery County is entitled to governmental immunity from state tort claims, if the claims arise from acts that the county performed in a governmental capacity. *Nam*, 732 A.2d at 362 (citation omitted). Relevant to this dispute, Maryland courts have recognized that the maintenance of prisons and jails is a governmental function that qualifies for governmental immunity. *See Jones*, 2016 WL 1321396, at *4; *see also Jones Hollow Ware*, 106 A. at 278; *accord Holly*, 434 F.3d at 300.

Maryland courts have held that public official immunity applies when: "(1) the individual actor, whose alleged negligent conduct is at issue, is a public official rather than a mere government employee or agent; … (2) his tortious conduct occurred while he was performing discretionary, as opposed to ministerial, acts in furtherance of his official duties;" and (3) the public official acted without malice. *Livesay*, 862 A.2d at 40. And so, Maryland courts have held that prison wardens are "public officials," who may be entitled to common law public official immunity from suit. *See Carder*, 170 A.2d at 221.

In this case, the County Defendants have shown that Montgomery County is entitled to governmental immunity from the Plaintiff's negligence claim here, because the amended complaint makes clear that this claim relates to the maintenance of a county jail, namely, the Seven Locks Detention Center. *See* ECF No. 42 at ¶¶ 56-62; ECF No. 46-1 at 12; *see also Jones*, 2016 WL 1321396, at *4; *Jones Hollow Ware*, 106 A. at 278; *Holly*, 434 F.3d at 300. And so, the Court must DISMISS the Plaintiff's negligence claim against Montgomery County.

The County Defendants also persuasively argue that Warden Abello and Deputy Warden Wade are entitled to public official immunity with regards to the Plaintiff's negligence claim against them, because these defendants are public officials who are alleged to have engaged in discretionary actions that fall within the scope of their official duties. *Carder*, 170 A.2d at 221 (holding that prison wardens are public officials). Notably, the amended complaint makes clear that the alleged actions of Warden Abello and Deputy Warden Wade involve their oversight of the maintenance and operations at the Seven Locks Detention Center. *See* ECF No. 42 at ¶¶ 5-6. These are discretionary actions that within the scope of their official duties as the warden and deputy warden of that facility.

The Plaintiff also alleges that Warden Abello and Deputy Warden Wade were responsible for transporting him to a psychiatric hospital, and that these defendants failed to ensure that the State Court Order "was abided by." ECF No. 42 at ¶ 60. But, the State Court Order relied upon

by the Plaintiff does not actually direct either of these defendants to take any action. *See generally* ECF NO. 42; *see* ECF No. 46-3. Rather, the State Court Order directs the Department of Health to admit the Plaintiff to a designated health care facility "as soon as possible and no later than 10 business days after the bail hearing" and directs the Montgomery County Sheriff's Department to transport the Plaintiff to the designated facility. *See* ECF No. 46-3.

Given this, there are no factual allegations in the amended complaint to show that Warden Abello and Deputy Warden Wade engaged in a non-discretionary act that the Plaintiff can rely upon to pursue his negligence claim. And so, the Court also DISMISS the Plaintiff's negligence claim against these defendants. Fed. R. Civ. P. 12(b)(6).

### C. The Plaintiff Fails To State A Gross Negligence Claim Against Trooper Stafford

As a final matter, a careful reading of the amended complaint also makes clear that the Plaintiff does not state a plausible gross negligence claim against Trooper Stafford in Count II of the amended complaint. To state a plausible gross negligence claim, the amended complaint must contain factual allegations to show: (1) that Trooper Stafford was under a duty to protect him from injury; (2) that Trooper Stafford breached that duty; (3) that the Plaintiff suffered actual loss or injury; and (4) that the loss or injury proximately resulted from Trooper Stafford's breach of the duty. *Todd*, 816 A.2d at 933; *Scott*, 359 A.2d at 552; *Torbit*, 153 A.3d at 853 (applying these elements to a claim for gross negligence). Relevant here, this Court has held that police officers do not owe a special duty to arrestees. *Krell*, 2018 WL 6523883, at *14. And so, police officers only have a duty to act with reasonable care. *Id*.

In the amended complaint, the Plaintiff alleges that Trooper Stafford "owed [him] a duty of care to ensure that the Statement of Charges properly identified him" and that Trooper Stafford breached this duty by misidentifying the Plaintiff as "Drake Daniels" in the Statement of Charges. ECF No. 42 at ¶¶ 18 and 49. But the Plaintiff does not identify a statute, rule or constitutional provision that would impose such a duty on Trooper Stafford. *See generally* ECF No. 42.

To the extent that Trooper Stafford owed the Plaintiff such a duty, the factual allegations in the amended complaint also make clear that this duty was not breached here. It is undisputed that the Statement of Charges cited by the Plaintiff also correctly identifies the Plaintiff as "Yerayel Ben-Yehuda." ECF No. 33-2 at 2; ECF No. 47-1 at 5; ECF No. 48 at 4-5; *see also* ECF No. 33-2 at 4 (identifying the Plaintiff in the Statement of Probable Cause as Yerayel Ben-Yehuda).

14

Because the amended complaint lacks facts to show that Trooper Stafford owed the Plaintiff the duty alleged, or that he breached this duty, the Plaintiff fails to state a plausible claim for gross negligence against Trooper Stafford.[4] And so, the Court also DISMISSES Count III of the amended complaint. Fed. R. Civ. P. 12(b)(6).

## V.  CONCLUSION

In sum, a careful reading of the amended complaint shows that the Plaintiff fails to state a plausible Section 1983/deliberate indifference claim against the County Defendants. The County Defendants have also shown that they are entitled to immunity with regards to the Plaintiff's negligence claim. Lastly, a careful reading of the amended complaint also shows that the Plaintiff fails to state a plausible gross negligence claim against Trooper Stafford.

And so, for the foregoing reasons, the Court:

(1) **GRANTS** the County Defendants' motion to dismiss (ECF No. 46);

(2) **GRANTS** Trooper Stafford's motion to dismiss (ECF No. 47); and

(3) **DISMISSES** the amended complaint (ECF No. 42).

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[4] Trooper Stafford also convincingly argues that the alleged inadequate mental health care that the Plaintiff received while he was incarcerated at the Seven Locks Detention Center is not a foreseeable harm arising from the misidentification of the Plaintiff in the Statement of Charges. ECF No. 47-1 at 9. Notably, there are no facts in the amended complaint to show that the misidentification of the Plaintiff in the Statement of Charges either, prevented the state court from correctly identifying the Plaintiff, caused the delay in the execution of the State Court Order, or prevented the Plaintiff's parents from locating him at the Seven Locks Detention Center. *See generally* ECF No. 42.